IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SAUL COOPER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-CV-00423-O-BL |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of the Social | § | |
| Security Administration | § | |
| Defendant. | § | Assigned to U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Saul Cooper seeks judicial review of the Commissioner of Social Security's decision, which denied her applications for a period of disability and disability insurance benefits under Title II of the Social Security Act. The United States District Judge transferred this case to the United States Magistrate Judge, and all parties consented to the jurisdiction of the Magistrate Judge. (Doc. 19)

After considering the pleadings, the briefs, and the administrative record, this Court affirms the Commissioner's decision and dismisses the claimant's complaint.

### Statement of the Case

Following a hearing on December 11, 2012, an Administrative Law Judge (ALJ) determined on March 20, 2013, that Cooper was not disabled. Specifically, the ALJ found that Cooper had not engaged in substantial gainful activity since her alleged onset of disability, that she had a severe combination of impairments, that her impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations, that she retained the residual

functional capacity (RFC) to perform a full range of light work activity with some exertional limitations, and that she was capable of performing her past relevant work. The Appeals Council denied review on April 1, 2014. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## Factual Background

Cooper filed an application for a period of disability and disability insurance benefits on June 27, 2011. (Tr. 119). Cooper claims she became disabled on April 29, 2011, due to arthritis in her lower back and shoulder, diabetes, and high blood pressure. (Tr. 119, 136). Prior to her alleged disability, Cooper held a job as an office manager, and most recently as a medical billing and filing clerk. (Tr. 36, 39, 40, 137). Cooper stopped working in April 2011 when her employer closed the business. (Tr. 36). Cooper then filed for unemployment and drew unemployment benefits until May 2012. (Tr. 38). During that time, she unsuccessfully searched for other work. (Tr. 38).

Medical records show Cooper sought treatment for diabetes, back and shoulder pain, and high blood pressure. (Tr. 209, 261, 287, 300, 304, 315, 410, 463). In October 2011, State agency consultant Kevin Samaratunga, M.D., conducted Cooper's physical RFC. (Tr. 336). He determined that Cooper could occasionally lift/carry twenty pounds and frequently lift/carry ten pounds. (Tr. 337). Dr. Samaratunga also found Cooper could stand, walk, and sit for a total of about 6 hours in an 8-hour workday. (Tr. 337). Further, he noted Cooper could occasionally climb stairs and ladders, stoop, and crouch, and could frequently balance, kneel, and crawl. (Tr.

338). Dr. Samaratunga indicated he found no manipulative, visual, communicative, or environmental limitations. (Tr. 339-340).

In November 2011, Cooper completed a functional capacity evaluation with physical therapist Karen Vavrin. (Tr. 354). Vavrin noted that Cooper demonstrates the ability to work in the following conditions: sitting posture for twenty minutes at a time, up to six hours; standing/walking posture for thirty minutes at a time, up to four hours; and a sedentary physical demand level which allows for lifting up to zero pounds frequently and up to ten pounds occasionally. (Tr. 354). Vavrin further reported that Cooper demonstrated the ability to both climb stairs and kneel on her right knee with rail assist occasionally and push, pull, trunk bend and twist frequently. (Tr. 354). Vavrin also indicated that Cooper had limitations with her right shoulder. (Tr. 354-55).

Regarding Cooper's mental conditions, in November 2011, Cooper underwent a psychological testing with Dr. Paul L. Warren, Psy.D. (Tr. 21, 345-348). Dr. Warren noted that Cooper exhibited test anxiety and appeared to be hesitant and guarded, but her gross and fine motor skills, posture, appearance, speech, and interpersonal skills were normal. (Tr. 346). Dr. Warren reported that Cooper's Full Scale I.Q. score placed her within the average range of intellectual functioning. (Tr. 346). Her Verbal Comprehension Index and Working Memory Index scores were below average. (Tr. 21, 346). Dr. Warren noted that Cooper's Wide Range Achievement Test results indicated diagnosis of a reading disorder and disorder of written expression. (Tr. 21, 347). The results of personality testing indicated a combination of depression and anxiety. (Tr. 347).

In December 2011, State Agency consultant Charles Lankford, Ph.D., completed a non-examining evaluation of Cooper's mental conditions. (Tr. 367). He found Cooper to have

anxiety, depression, reading disorder, and disorder of written expression. (Tr. 367, 368, 370). He concluded that Cooper's mental impairments were non-severe. (Tr. 367).

## Standard of Review

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). Additionally, a claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 1382c(a)(3)(B), 423(d)(2)(A); *see* 20 C.F.R. §§ 404.1505, 416.911. "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before

proceeding to Steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry of whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). To determine whether the Commissioner's decision is supported by substantial evidence, the Court weighs four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chatter*, 64 F.3d 172, 174 (5th Cir. 1990); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## Discussion

Plaintiff raises a single issue on appeal. She claims: "The ALJ substituted his lay opinion for that of a trained mental health professional regarding Cooper's mental impairments." (Pl.'s Br. 10).

After considering the record as a whole, the ALJ followed the five-step sequential evaluation process and determined that Cooper was not disabled within the meaning of the Social Security Act. (Tr. 16-26). At Step one, the ALJ found that Cooper did not engage in substantial gainful activity after April 29, 2011, her alleged onset of disability date. (Tr. 16). At Step two, the ALJ found that Cooper had the following severe combination of impairments: "obesity, osteoarthritis of the right foot, right acromioclavicular joint arthritis, biceps tendinosis, mild degenerative change to the lumbar spine, degenerative changes to the cervical spine, mild carpal tunnel syndrome, major depression, single episode, generalized anxiety disorder, reading disorder, disorder of written expression, hypertension, diabetes, and mild right shoulder bursitis." (Tr. 16). At Step three, the ALJ found these impairments, alone or in combination, did not meet or equal a listed impairment under the applicable regulations. (Tr. 17). Before proceeding to Step four, the ALJ assessed Cooper's RFC and determined that she retained the ability to

> lift, carry, push, or pull 20 pounds occasional[ly] and 10 pounds frequently; sit, stand, or walk (individually or in combination) throughout 8-hour workday; and otherwise perform the full range of light work, except: she can only occasionally stoop, crunch, or climb ramps, stairs, ladders, scaffolds, or ropes; she can frequently balance, kneel, and crawl; and she cannot work overhead with her right (dominant) upper extremity.

(Tr. 18). At Step four, the ALJ determined that Cooper was capable of performing her past relevant work; therefore, the ALJ did not proceed to Step five. (Tr. 25).

**I.  The ALJ did not substitute his own opinion for that of a trained mental health professional regarding Cooper's mental impairments.**

Cooper alleges that the ALJ substituted his own opinion for that of a trained mental health professional at Step two of the sequential evaluation process because an examining psychologist noted Cooper will be at a disadvantage in the workforce if her mental impairments are left untreated, but the ALJ found Cooper's mental impairments would not be expected to interfere with her ability to work. (Tr. 17,); (Pl.'s Br. 7, 10). Thus, Cooper claims her mental impairments have not been adequately addressed, and the decision is not supported by substantial evidence. (Pl.'s Br. 15). Even though Plaintiff raises a Step two issue regarding the severity of Cooper's mental impairments, it is likely the determination of severity is an RFC issue. (Pl.'s Br. 12). To give the Plaintiff the benefit of the doubt, this Court will also construe the issue to be an RFC issue.

At Step two of the Commissioner's five-step evaluation process, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1991); 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ proceeds past Step two in the process, the court must infer that it was determined that the claimant had a severe impairment. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (concluding that the ALJ implicitly found a severe impairment where the ALJ went beyond the second step). A finding that a claimant has a "severe" impairment does not require the ALJ to find that the claimant is disabled; rather, it requires the ALJ to proceed to the subsequent steps in the sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920.

The Fifth Circuit has stated that a failure to make a severity finding at Step two is not reversible error when an ALJ continues with the sequential evaluation process. *Herrera v. Comm'r of Soc. Sec.*, 406 Fed. App'x. 899, 903 (5th Cir. 2010) (citing *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987)). In *Herrera*, the court rejected claimant's arguments that remand

was warranted because the ALJ failed to determine the severity of certain impairments. *Id.* In so doing, the court stated that the "case did not turn on a finding that Herrera's impairments were not severe at Step two; rather, the ALJ concluded that Herrera was not disabled because, despite his severe impairments, he retained the [RFC] to do other work. Therefore, the ALJ's failure to assess the severity of Herrera's . . . impairments at Step two is not a basis for remand." *Id.*

So long as the ALJ finds a severe impairment or a severe combination of impairments, the ALJ will proceed to Step three to determine if the impairment(s) meets or equals a listed impairment in Appendix 1. 20 C.F.R. § 404.1520(c). If the impairment(s) does not meet or equal a listed impairment, the ALJ will make a finding regarding the claimant's RFC based on the relevant evidence in the record. 20 C.F.R. § 404.1520(e).

The ALJ is responsible for determining the claimant's RFC. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990); 20 C.F.R. § 404.1546. Moreover, the determination of a claimant's RFC is reserved for the ALJ alone. 20 C.F.R. § 404.1546(a); SSR 96-6p, 1996 WL 374180 (Jul. 2, 1996). To evaluate a claimant's RFC, the ALJ must consider the limiting effects of all the claimant's impairments, even those that are not severe. 20 C.F.R. § 404.1545(e). The ALJ may consider evidence such as limitations observed by the claimant herself, the claimant's family and friends, or other persons. 20 C.F.R. § 404.1545(a). Such evidence is considered along with the medical evidence to determine the extent of a claimant's limitations. *Id.* Still, an ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). An ALJ may rely on a non-examining physician's assessment when the assessment is based upon a careful evaluation of the medical evidence and does not contradict those of the examining physician. *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.

1991) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)). Accordingly, the ALJ considers medical opinions, together with the other evidence, to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(b).

It is the role of the Commissioner, rather than the court, to weigh the evidence when determining whether a claimant is disabled. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). As stated above, if the court determines that the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452. Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The substantial evidence standard is highly deferential to the ALJ. *See Lopez v. Bowen*, 806 F.2d 632, 634 (5th Cir. 1986). Where substantial evidence supports the findings, the ALJ's decision must be affirmed, even if substantial evidence also supports the opposite conclusion. *Id.*

In the instant case, Cooper argues that the ALJ substituted his own opinion for that of a trained mental health professional. (Pl.'s Br. 10). However, the ALJ did not reject the examining physician's opinion. The examining psychologist, Dr. Warren, diagnosed Cooper with major depression, generalized anxiety disorder, reading disorder, and disorder of written expression. (Tr. 347). The ALJ included Dr. Warren's diagnoses within the severe combination of impairments at Step two and considered these impairments in his RFC determination.[1] (Tr. 16, 17, 21). In considering Cooper's mental impairments along with the evidence in the record, the

---

[1] Specifically, the ALJ noted the claimant has multiple impairments with at least one severe impairment, and that he need not "waste time" designating each impairment as severe or not severe. Further, the ALJ stressed that he considered *all* of the claimant's impairments during the rest of his evaluation.

Page 9 of 12

ALJ found Cooper's mental impairments did not impose mental limitations in the RFC finding. (Tr. 17-25).

The evidence in the record shows that in 2011, when Dr. Warren diagnosed Cooper with major depression, generalized anxiety disorder, reading disorder, and disorder of written expression, he also recommended medication for Cooper to treat her depression and anxiety or else she "will be at [a] considerable disadvantage in the workforce with regard to productivity and effectiveness" (Tr. 347-48). Even though Dr. Warren reported Cooper may be at a disadvantage in the workforce if her impairments are left untreated, it is the ALJ's duty to determine Cooper's RFC and whether the impairments affect Cooper's ability to work based on the information in the record. 20 CFR § 404.1520(f).

In determining Cooper's ability to work, the ALJ considered, among other things, Dr. Warren's diagnoses, the State Agency consultant's findings regarding Cooper's mental impairments, as well as Cooper's own subjective complaints. (Tr. 17, 21, 23). In 2011, the non-examining State Agency consultant, Charles Lankford, Ph.D., found similar results to that of Dr. Warren, finding that Cooper had depression, anxiety, reading disorder, and disorder of written expression. (Tr. 367-68). However, Dr. Lankford found Cooper's mental impairments were non-severe. (Tr. 367). Cooper's own complaints indicated that she was depressed, irritable, felt worthless, and suffered from low self-esteem. (Tr. 20, 50, 52). The ALJ reported that Cooper's medically determinable impairments could reasonably be expected to cause some of her reported symptoms, but the ALJ found Cooper's statements concerning the effects of her impairments had limited credibility. (Tr. 20). Having the authority to make credibility decisions, *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991), the ALJ found that not only did the objective medical evidence not fully support Cooper's allegations regarding her physical impairments, but

also that the record as a whole did not support Cooper's subjective complaints. (Tr. 17, 23, 24). The ALJ noted that even though Cooper claims her impairments prevent her from working, Cooper testified that she stopped working after her employer's business closed and that she continued looking for work. (Tr. 24, 38). Further, the ALJ indicated the fact that Cooper applied for and received unemployment benefits after she stopped working is inconsistent with the claimant's allegations of disability because an individual must certify she is able to work to collect unemployment benefits. (Tr. 24, 38). Therefore, the ALJ noted that Cooper's actions suggest that she believed she was able to work, which "erode[d] her credibility" and contributed to the finding that her mental impairments were not disabling. (Tr. 24).

By examining the record as a whole and finding Cooper's mental impairments do not affect her ability to work, the ALJ is not substituting his own opinion for that of Dr. Warren. As indicated above, the ALJ in fact included Dr. Warren's findings—that matched Dr. Lankford's results—that Cooper had anxiety, depression, reading disorder, and disorder of written expression in his evaluation, as well as the other objective medical findings and Cooper's own complaints to determine that she could perform her relevant past work. (Tr. 16, 17, 21, 23, 25).

Cooper argues that this Court's opinion in *Blades v. Commissioner of Social Security Administration*, which held that "an [ALJ] may not substitute her own lay opinion for the opinion of a treating physician whose testimony is uncontroverted[,]" supports her argument in favor of remand. *Blades v. Comm'r of Soc. Sec. Admin.*, No. 3:01-CV-2483-K, 2003 U.S. Dist. LEXIS 23165, at *24 (N.D. Tex. Dec. 12, 2003) (Stickney, J.); (Pl.'s Br. 11). However, in *Blades*, the ALJ's decision was remanded because the examining psychologist found the claimant had a severe mental impairment, which the ALJ rejected at Step two and thus did not move forward to Step three. *Blades*, 2003 U.S. Dist. LEXIS 23165 at *4-5. Here, the ALJ found

there was a severe combination of impairments—including Cooper's mental impairments diagnosed by Dr. Warren—at Step two and moved forward with the sequential evaluation process. (Tr. 16-17). Therefore, because the ALJ considered the examining psychologist's findings at Step two and proceeded to Step three, *Blades* does not support a remand in the instant case. *Id*; (Tr. 16-17).

Cooper also argues that the ALJ gave more weight to the non-examining State Agency consultant than Dr. Warren, the examining psychologist, but both psychologists found Cooper had similar mental impairments and the ALJ included those impairments in his analysis. (Pl.'s Br. 14-15); (Tr. 16, 17, 21, 347, 367-68). The psychologists differed in their findings regarding the severity of Cooper's mental impairments, but ultimately the ALJ makes the determination of whether the impairments affect Cooper's ability to work after examining the record as a whole. 20 C.F.R. § 404.1546(a). Based on the information in the record, there is substantial evidence to support the ALJ's findings that Cooper retained the RFC to perform her past relevant work. As such, the ALJ's decision must stand. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390.

## Conclusion

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** and Cooper's complaint is **DISMISSED**. Any appeal shall be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

**SO ORDERED.**

Dated this 10th day of August, 2015.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE